IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:04CV95-V

| | |
|---|---|
| TODD BLAKE WOODSIDE, )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>IREDELL COUNTY, IREDELL COUNTY )<br>SHERIFF'S DEPARTMENT, IREDELL )<br>COUNTY JAIL, SHERIFF PHILLIP )<br>REDMOND, CAPTAIN RICK DOWDLE, )<br>CORPORAL FNU "MURPH" MURPHY, )<br>individually and in his official capacity, )<br>SERGEANT TRAVIS WARD, individually )<br>and in his official capacity, FIDELITY and )<br>DEPOSIT CO. OF MARYLAND, surety for )<br>SHERIFF REDMOND, and DOES 1 - 10, )<br>Defendants. )<br>_____ ) | Memorandum and Order |

**THIS MATTER** comes before the Court on Defendants' Motion To Dismiss and Memorandum In Support, filed February 14, 2005. (Documents #6, #7) Plaintiff did not respond to Defendants' motion initially.

On June 3, 2005, the Court directed Plaintiff to file a response or subject the civil action to summary dismissal. (Document #11) On June 23, 2005, Plaintiff filed a one-page document entitled "Reply" which stated succinctly:

> "The Plaintiff, by and through counsel, denies the allegations of Defendant's motion to dismiss Plaintiff's federal claims. Plaintiff admits that if Plaintiff's federal claims are dismissed this action should be removed to State court. Plaintiff requests that none of his claims be dismissed and that Defendant's motion be denied."

(Document #13) Plaintiff did not submit any legal argument, nor any legal memoranda, in support of his response.

1

**I. Facts As Alleged By Plaintiff**

According to Plaintiff: On or about July 18, 2004, Plaintiff wrecked his Yamaha scooter on the side of Autumn Leaf Road, located in Iredell County, North Carolina.[1] (Am. Compl., ¶5) Frances Bunk ("Bunk") witnessed the accident and telephoned "911." (Am. Compl., ¶6) Bunk stayed with the Plaintiff until paramedics arrived. (Am. Compl., ¶6) Upon information and belief, Plaintiff was unconscious and had blood coming from his mouth. (Am. Compl., ¶6)

A state highway patrol officer arrived on the scene while paramedics were treating Plaintiff. (Am. Compl., ¶7) Plaintiff was arrested for impaired driving and taken to the Iredell County Jail. (Am. Compl., ¶7) Plaintiff refused the intoxilyzer. (Am. Compl., ¶7) Plaintiff was placed under a $500.00 secured bond and placed alone in a holding cell. (Am. Compl., ¶7)

An hour or so later, Plaintiff began to have trouble breathing and began to spit up blood. (Am. Compl., ¶8) Plaintiff "rang the intercom but no one came." (Am. Compl., ¶8) Plaintiff then kicked the door to the holding cell. (Am. Compl., ¶8) Defendant Sgt. Travis Ward responded. (Am. Compl., ¶9) Plaintiff advised that "he was dying and needed help." (Am. Compl., ¶9) Sgt. Ward allegedly told Plaintiff "that if he kicked the door again he would get Plaintiff help and that it would be better if Plaintiff died." (Am. Compl., ¶9) Ward walked away. (Am. Compl., ¶9)

---

[1] Defendants contend that the actual date in question is 7-18-02 (as opposed to 2004). Based upon the "on or about" language within the Amended Complaint, the undersigned presumes that the accident occurred in the late evening of July 17, 2002, or early morning hours of July 18, 2002.

Plaintiff kicked the door again. (Am. Compl., ¶10) "[Sgt.] Ward, Defendant [Corporal FNU] Murphy, and two or three other sheriff's deputies ("Defendant Does") came into the holding cell, grabbed Plaintiff, slammed him into a wall, took the mattress from the bunk, and handcuffed Plaintiff to the bunk in such a way that Plaintiff could not reach the intercom or the door." (Am. Compl., ¶10) Plaintiff yelled intermittently for the rest of the night. (Am. Compl., ¶11) Periodically, deputies ("Defendant Does") came to the door and laughed at Plaintiff. (Am. Compl., ¶11) Plaintiff's handcuffs were removed during the early morning shift change. (Am. Compl., ¶11) Plaintiff was told to wait until the nurse arrived at 9:00 a.m. (Am. Compl., ¶11)

Upon the nurse's arrival and a brief examination, the nurse directed Deputy Wayne Mills to convert Plaintiff's bond from secured to unsecured so that he might be released. (Am. Compl., ¶12) The nurse allegedly told Deputy Mills that "she wanted [Plaintiff] out of jail in five minutes." (Am. Compl., ¶12) Mills returned with an unsecured bond and Plaintiff was released. (Am. Compl., ¶¶12, 13) Plaintiff spoke to a security guard and requested an ambulance. (Am. Compl., ¶13) Plaintiff was transported to Iredell Memorial Hospital and treated for ruptured spleen, broken ribs, a head injury, internal bleeding and other injuries. (Am. Compl., ¶¶13, 14)

## II. Legal Standard / Fed. R. Civ. P. 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999)(*quoting* Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992)). As the Supreme Court explained in another Section 1983 case:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss ... for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). In other words, a Rule 12(b)(6) motion is not the mechanism for resolving disputes regarding the facts, the merits of a claim, or the applicability of defenses. Id.; City of Goldsboro, 178 F.3d at 244.

### III. The Iredell County Defendants Are Not Proper Parties[2]

As a general rule, a municipality is liable for the actions of its *employees* only if a Plaintiff can prove that the city through its "lawmakers or those whose edicts or acts may fairly be said to represent the official policy," established a custom or policy which resulted in a violation of Plaintiff's constitutional rights. Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978). First, it is not entirely clear that the elected sheriff and other sheriff department employees are *county* employees under North Carolina law. N.C. Gen. Stat. § 153A-103(1)[3]; Guy v. Jones, 747 F.Supp. 314, 317-18 (E.D.N.C. 1990)(office of the sheriff is "employer" rather than county for purposes of Monell analysis) (*citing* Peele v. Provident Mutual Life Ins. Co., 90 N.C.App. 447, 368 S.E.2d 892 (1988) (dispatcher with sheriff's department not a county employee for purposes of wrongful

---

[2] The Iredell County Defendants include: Iredell County, the Iredell County Sheriff's Department, and the Iredell County Jail.

[3] Section 153A-103(1) provides that the sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office."

4

discharge action)). Secondly, even if deemed to be county employees, North Carolina law appears to preclude county liability for most actions of sheriff's department personnel. In other words, North Carolina law draws a distinction between a sheriff and the county in which he works, and the respective liability of each for the alleged misconduct of individual deputies or jailers. *See* Knight v. C.D. Vernon, 214 F.3d 544, 552-553 (4th Cir.2000); Little v. Smith, 114 F.Supp.2d 437, 446 (W.D.N.C. 2000); Guy, 747 F.Supp., at 317-318; N.C. Gen. Stat. §§ 153A-103(1) and §§ 162-1 and 162-24.

Equally important, Plaintiff has not alleged sufficient facts to proceed on a theory of county-wide policy. Plaintiff alleges that, upon information and belief, the conduct at issue "was the direct product of certain constitutionally deficient policies, practices and customs implemented, maintained and tolerated by Iredell County."[4] (Am. Compl., ¶15) Section 1983 complaints which on critical elements of a claim merely recite legal conclusions "wholly devoid of facts," may properly be dismissed for insufficiency of statement. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989) (*quoting* Strauss v. City of Chicago, 760 F.2d at 767 (§ 1983 claimant must allege some fact or facts tending to support assertion that municipal policy has caused his constitutional injury to survive 12(b)(6) motion)). A single act of the type here alleged cannot suffice, standing alone, to establish the existence of such a policy. Id. (*citing* City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427 (1985)). At best, Plaintiff's allegations support an

---

[4] Plaintiff alleges that the Iredell County Jail and Iredell County Sheriff's Department are "independent operating departments of Iredell County." (Am. Compl., ¶3) Therefore, Plaintiff's inclusion of the sheriff's department and jail as named defendants relies solely on the same conclusory allegation.

5

isolated incident of improper conduct that occurred during <u>one</u> shift at the jail.[5]

**IV. Plaintiff's Claims Pursuant To Title 42, United States Code, Sections 1981, 1985, 1988 and Negligence Are Summarily Dismissed**

For the reasons stated in Defendants' motion and memorandum in support, the relevant portions of said memorandum hereby incorporated by reference, the causes of action alleged by Plaintiff in his Amended Complaint (First, Third, Fourth, and Fifth Claims For Relief) pursuant to Title 42, United States Code, Sections 1981, 1985, 1988 and based upon negligence are hereby <u>dismissed</u>. (Defendants' Mem. In Supp., Sections III, V-VII.)

**V. Analysis - 42 U.S.C. §1983 Claim (Second Claim For Relief)**

**1. Deliberate Indifference To Serious Medical Needs**

A constitutional claim for denial of medical care has both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994). In order to establish a Fourteenth Amendment violation for deliberate indifference to serious medical needs, Plaintiff must show 1) that the alleged deprivation was sufficiently serious, and 2) that the defendants acted with deliberate indifference. <u>Wilson v. Seiter</u>, 501 U. S. 294, 299 n. 1, 111 S. Ct. 2321 (1991); <u>Bell v. Wolfish</u>, 441 U.S. 520, 545, 99 S.Ct. 1861 (1979)(pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment); <u>Riley v. Dorton</u>, 115 F.3d 1159 (4th Cir.1997).

A sufficiently serious medical need exists if the inmate is able to show "he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer</u>, 511 U.S.

---

[5] It can be inferred from Plaintiff's Amended Complaint that the third shift (or night shift) was on duty when Plaintiff was detained and placed in custody. (According to Plaintiff, the handcuffs were removed before shift change and Plaintiff was told to wait for the nurse to arrive at 9 a.m.)

6

at 834.  "[A] medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."" Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2005)(*citing* Harden v. Green, 27 Fed. Appx. 173, 2001 WL 1464468, at *3 (4th Cir. 2001)).

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U. S. 97, 106, 97 S. Ct. 285 (1976); Bell, 441 U.S. at 545; Whisenant v. Yuam, 739 F.2d 160, 163 n. 4 (4th Cir.1984)(Eighth Amendment standard set forth in Estelle may be used to determine pretrial detainee's claim of due process violation).  The inmate must establish the official knew of and disregarded an excessive risk of inmate health or safety to be considered deliberately indifferent.  Farmer, 511 U. S. at 837; Odom v. South Carolina Dep't of Corrs., 349 F.3d 765, 770 (4th Cir.2003)(explaining that the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Allegations of mere negligence are insufficient to state a valid claim for relief under the Eighth Amendment.  Estelle, 429 U. S. at 106; Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662 (1986).

In this case, Plaintiff alleges facts from which a reasonable juror could find that he suffered from sufficiently serious injuries.  Plaintiff's complaint stems from injuries including a ruptured spleen, broken ribs, head injury and internal bleeding.  (Am. Compl., ¶¶13, 14)  The brevity of the nurse's physical exam, as well as the manner in which Plaintiff was released from custody (the conversion of Plaintiff's bond from secured to unsecured at the

7

request of the nurse), tends to show that Plaintiff was in need of immediate medical attention and not malingering.[6] These types of injuries, are "sufficiently serious" for purposes of 42 U.S.C. §1983. Torres v. New York City Dept. of Corr'ns, 1995 WL 63159 (S.D.N.Y.) (broken rib could present a serious medical need); El-Uri v. City of Chicago, 186 F.Supp.2d 844 (N.D. Ill. 2002)(ruptured spleen constitutes serious medical need).

Plaintiff also alleges facts from which a reasonable juror could find the Defendants' actions were deliberately indifferent. Plaintiff alleges that he was having difficulty breathing and was spitting up blood when he requested medical attention from the jailers. If Defendants observed either of Plaintiff's alleged symptoms, a reasonable inference could be drawn that Plaintiff had an objectively serious injury warranting a doctor's immediate care.[7] However, according to Plaintiff, Sgt. Ward ignored Plaintiff's initial request for help, implicitly threatened Plaintiff in an attempt to discourage further requests for help, and told Plaintiff it would be better if he died. Plaintiff's allegation that the unidentified jailers laughed at him during the course of his confinement could also be construed as evidence of a deliberate indifference to Plaintiff's medical condition. Further, viewed in the light most favorable to Plaintiff, the fact that Plaintiff was handcuffed to the bunk, and prohibited from seeking more timely attention to his injuries, supports Plaintiff's claim.

---

[6] If proven at trial, the brevity of the nurse's physical examination of Plaintiff also lends support to Plaintiff's claim of deliberate indifference by Defendants.

[7] Plaintiff's purported intoxication, while not directly at issue, may effectively skew the facts alleged by Plaintiff. Similarly, if Plaintiff was impaired due to alcohol abuse, this fact invariably influenced how Defendants perceived and evaluated Plaintiff's requests for medical attention. (The outcome of Plaintiff's driving while impaired offense is not mentioned in the existing record.) How urgent Plaintiff's medical needs really were, or would have appeared to a reasonable person in the Defendants' shoes, depends upon many factors, including how Plaintiff presented his request and how obvious his symptoms were. The record does not show what medical conclusions were reached by paramedics at the scene of the crash.

**2. Excessive Force**

In order to survive Defendant's Rule 12(b)(6) motion on an excessive force theory under Section 1983, Plaintiff must allege that Defendants "inflicted unnecessary and wanton pain and suffering." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir.1998); Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989). In evaluating Plaintiff's claim that he was subject to excessive force, the proper inquiry is whether "the force applied 'was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " Taylor, 155 F.3d at 483.

In this case, Plaintiff alleges that he was slammed into a wall and handcuffed to a bunk with no mattress. While Plaintiff does not describe how either of these alleged actions caused or contributed to the injuries for which he was treated, it would not be unreasonable to infer that the force of multiple jailers grabbing Plaintiff and slamming him into a wall either resulted in injury, or exacerbated an already existing injury. At this stage of the litigation, it is impossible to determine what injuries Plaintiff suffered as a result of the motorcycle wreck and what injuries, if any, Plaintiff sustained at the hands of the Defendants in the alleged jail cell scuffle the night of his arrest. Presumably, the paramedics' records and / or jail records will shed some light on Plaintiff's condition immediately following the accident as well as upon admission to the jail. It may be that Plaintiff's allegation of excessive force is subject to dismissal at summary judgment.[8]

---

[8] Absent the relatively serious injuries Plaintiff allegedly sustained, the Court would scrutinize this specific conduct more closely to determine whether the harm to Plaintiff was *de minimis*. Riley, 115 F.3d at 1166 (extending rule that *de minimis* use of physical force does not rise to level of constitutional violation to pretrial detainees) (*citing* Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.1994)(*en banc*); Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401 (1977)).

### 3. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[9] Harlow v. Fitzgerald, 457 U. S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); Pinder v. Johnson, 54 F.3d 1169, 1173 (4th Cir.1995)(*en banc*). Qualified immunity reflects the concern that civil damages awards against public officials for every judicially determined violation of constitutional rights would prove too expensive to the public, discourage public service employment, and impair governmental decision-making. Id. at 814. The Court considers whether Plaintiff's Second Claim against the remaining official capacity defendants is subject to dismissal based upon qualified immunity.

The framework for a qualified immunity analysis: 1) first identifies the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity; 2) considers whether at the time of the claimed violation that right was clearly established; and 3) analyzes whether a reasonable person in the official's position would have known that his conduct would violate that right.

"For a right to have been clearly established, the "contours of the right" must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." City of Goldsboro, 178 F.3d, at 251.

---

[9] Defendants do not expressly rely on qualified immunity as a means of defeating Plaintiff's cause of action. Instead, Defendants' analysis stops short of an analysis on the merits - focusing on the technical legal standards applied to pretrial detainees and convicted persons.

The Court first notes that Plaintiff's remaining claims, deliberate indifference to a serious medical need and the use of excessive force, both allege constitutional violations as applied to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. On this record, however, the Court is not able to determine whether the specific allegations constitute violations of "a clearly established constitutional right." Nor is the Court able to determine whether a reasonable person in Defendants' shoes would have acted any differently.

In instances where there is a material dispute over what actually happened, and the parties' versions of the incident dictate whether the alleged constitutional violation was, in fact, "clearly established", it may be impossible to resolve the qualified immunity question without discovery. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir.1995)(*citing* Anderson v. Creighton, 483 U.S. 635, 646-47 n. 6, 107 S.Ct. 3034 (1987)); Ervin v. Mangum, 127 F.3d 1099, 1997 WL 664606, **7 (4th Cir. 1997)(*unpublished*)(rejecting defendant's contention at summary judgment that it was not a violation of clearly established law to deny a pretrial detainee immediate medical care whose eyes were swollen shut, whose face was broken, and whose nose had bled all night).

For the reasons already described, *supra,* the Court cannot find, as a matter of law, that Defendants' actions could not have constituted "deliberate indifference" to Plaintiff's serious medical needs or that Defendants' actions could not have amounted to an excessive use of physical force. Defendants' motion to dismiss Plaintiff's Second Claim For Relief will be denied.

### VI. Conclusion

**IT IS, THEREFORE, ORDERED** that Defendants' Motion To Dismiss is hereby **GRANTED in part and DENIED in part.** With the exception of Plaintiff's §1983 claim, all other claims (First, Third, Fourth and Fifth Claims For Relief) are **DISMISSED.** All claims against the Iredell County Defendants (Iredell County, Iredell County Sheriff's Department, and Iredell County Jail) are likewise **DISMISSED**.

Signed: June 2, 2006

Richard L. Voorhees
Chief United States District Judge